[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15333
Non-Argument Calendar

_____

Agency No. A095-898-281

ANGEL ALBERTO SALCEDO-MORA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 10, 2009)

Before DUBINA, Chief Judge, TJOFLAT and ANDERSON, Circuit Judges.

PER CURIAM:

Angel Salcedo-Mora, a native and citizen of Colombia, petitions our Court

to review an order of the Board of Immigration Appeals ("BIA") dismissing his appeal of the Immigration Judge's ("IJ's") order of removal and denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. § 1158, 8 U.S.C. § 1231, 8 C.F.R. § 208.16. On review, Salcedo-Mora argues that: (1) the IJ abused her discretion in denying his third motion for continuance, which was based on the pendency of his asylee relative petition; and (2) the IJ and the BIA erred in making an adverse credibility finding and in denying his claims for asylum and withholding of removal.

**Motion for Continuance**

On review, Salcedo-Mora argues that the IJ improperly focused on a minor discrepancy, i.e., that he had indicated in his asylum application that he was single, but now claimed that he had had a common-law marriage. He argues that he met his burden to establish by a preponderance of the evidence that he was eligible for derivative asylum, and that he was simply waiting for the asylee relative petition to be processed.

We review an IJ's denial of a motion for continuance for an abuse of discretion. Haswanee v. U.S. Att'y Gen., 471 F.3d 1212, 1214 (11th Cir. 2006). The immigration regulations provide that an IJ may grant a continuance "for good

cause shown." 8 C.F.R. § 1003.29; Haswanee, 471 F.3d at 1214. According to BIA precedent, "an immigration judge's decision denying [a] motion for continuance will not be reversed unless the alien establishes that [the] denial caused him actual prejudice and harm and materially affected the outcome of his case." Matter of Sibrun, 18 I. & N. Dec. 354, 356-57 (BIA 1983). "Judicial review of denials of discretionary relief incident to [removal] proceedings . . . is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Garcia-Mir v. Smith, 766 F.2d 1478, 1490 (11th Cir. 1985) (quotation omitted) (reviewing denials of motions to reopen).

The record shows that the IJ did not make an arbitrary or capricious decision to deny a third continuance. Instead, the IJ recognized that the proceedings had already been delayed for a long time, and because the IJ had granted prior continuances, nearly three years had passed when the IJ set the case for a merits hearing, and four years had passed when the IJ eventually conducted the merits hearing. In addition, the IJ stated that Salcedo-Mora could not show that the asylee relative petition was prima facie approvable given the contradictory evidence of his marital status when he filed his asylum application. Morever, the IJ noted that if the asylee relative petition were granted, Salcedo-Mora would receive the benefit of that petition regardless of the result of his merits hearing. Thus, Salcedo-Mora

3

also could not establish that the denial of his motion for continuance affected the outcome of his merits hearing. See Sibrun, 18 I. & N. Dec. at 356-57. Based on the IJ's stated reasons, which were supported by the record, this Court should conclude that the IJ did not abuse her discretion in denying Salcedo-Mora's third motion for continuance.

Salcedo-Mora argues that he made a "colorable showing" of eligibility for relief based on his common-law marriage. However, as this Court noted in Bull, the BIA's general rule that an IJ should grant a continuance when an applicant can show eligibility for relief with regard to another pending petition is not an inflexible requirement. Bull, 790 F.2d at 872; Garcia, 16 I. & N. Dec. at 656-57. In Salcedo-Mora's case, moreover, he clearly indicated in his asylum application and in statement to the Colombian human rights office that he was single, and he did not explain in either case that he was in a common-law relationship. Accordingly, even if Salcedo-Mora were to establish for purposes of the asylee relative petition that he did have a common-law marriage in Colombia, the IJ's decision was still based on the evidence in the record and not arbitrary or capricious.

**Adverse Credibility Determination and Denial of Relief**

Salcedo-Mora argues that the IJ erred in finding him not credible because, with regard to each inconsistency noted by the IJ, either he provided an adequate

4

explanation, the inconsistency was minor, or the record did not clearly indicate an inconsistency. He also argues that the evidence compels the conclusions that he suffered past persecution by the Revolutionary Armed Forces of Colombia ("FARC"), and that he likely would likely suffer future persecution by the FARC if returned to Colombia.[1]

"We review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent the BIA adopts the IJ's reasoning, we also review the IJ's decision. Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1230 (11th Cir. 2006). The BIA's factual determinations are reviewed under the substantial evidence test, which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). We will affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." D-Muhumed, 388 F.3d at 818 (quotation omitted). "To reverse the . . . fact findings, we must find that the

---

[1] We do not have jurisdiction to review the denial of CAT relief because Salcedo-Mora did not challenge the denial of CAT relief in his notice of appeal or brief to the BIA. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006) (holding that we will not review an issue or claim that was not presented to the BIA in the petitioner's notice of appeal or brief to the BIA, even if the BIA considered the issue or claim sua sponte). In this case, moreover, Salcedo-Mora does not raise the issue of CAT relief in his petition for review or his brief to this Court.

5

record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The U.S. Attorney General or the Secretary of the Department of Homeland Security has discretion to grant asylum if the alien meets the INA's definition of "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A); 8 U.S.C. § 1101(a)(42)(A).

To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. An applicant may not show merely that he can establish a listed factor, but must show a causal connection between the persecution, or feared persecution, and a listed factor. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (citing 8

C.F.R. § 208.13(a), (b)).  We have held that not all "exceptional treatment" constitutes persecution.  Zheng v. U.S. Att'y General, 451 F.3d 1287, 1290 (11th Cir. 2006).  We have described persecution "as an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution."  Id. (quotation omitted).  "In determining whether an alien has suffered past persecution, the IJ [and the BIA] must consider the cumulative effects of the incidents."  Delgado v. U.S. Att'y Gen., 487 F.3d 855, 861 (11th Cir. 2007).

To establish a "well-founded fear" of future persecution, "an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable."  Al Najjar, 257 F.3d at 1289.  An asylum applicant can establish a well-founded fear of future persecution by presenting "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of" the statutorily listed factor.  Id. at 1287 (quotation omitted).  Alternatively, an applicant can establish a well-founded fear of persecution by establishing that there is a pattern or practice of persecution of persons similarly situated on account of the statutorily listed factor.  8 C.F.R. § 208.13(b)(2)(iii).

Under the INA's provisions for withholding of removal, the Attorney General "may not remove an alien to a country if the Attorney General decides that

7

the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). "An alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question." Mendoza, 327 F.3d at 1287; 8 C.F.R. § 1208.16(b). Because the evidentiary burden for withholding of removal is greater than that imposed for asylum, if an alien has not met the well-founded fear standard for asylum, he generally cannot meet the standard for withholding of removal. Al Najjar, 257 F.3d at 1292-93.

We review credibility determinations under the substantial evidence test and will not substitute our judgment for that of the IJ or BIA. D-Muhumed, 388 F.3d at 818.

> [T]he IJ [or BIA] must offer specific, cogent reasons for an adverse credibility finding. Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's [or BIA's] credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence. A credibility determination, like any fact finding, may not be overturned unless the record compels it.

Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) (citations and quotations omitted).

"Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments."

8

Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006). If credible, an alien's testimony may be sufficient, without corroboration, to sustain his burden of proof in establishing his eligibility for relief from removal. Forgue, 401 F.3d at 1287. "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." Id. "[A]n adverse credibility determination, [however], does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant," and it is not sufficient for the IJ to rely on the adverse credibility finding alone, if the applicant produces other evidence of persecution. Id. "The weaker an applicant's testimony, . . . the greater the need for corroborative evidence." Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). This Court has held that an applicant's failure to mention certain aspects of his claim before the hearing can support an adverse credibility finding. Forgue, 401 F.3d at 1287 (holding that in light of an applicant's omission of various relevant facts from his asylum application, "substantial evidence support[ed] the IJ's adverse credibility determination").

Upon review of the record and the briefs of the parties, we conclude that substantial evidence supports the BIA's and IJ's determinations that Salcedo-Mora (1) was not credible, (2) did not show past persecution or a well-founded fear of future persecution, and (3) therefore, was not eligible for asylum. The BIA and the IJ gave specific examples of discrepancies supporting their adverse credibility

findings, which are supported by substantial evidence. See Forgue, 401 F.3d at 1287. The BIA noted that the record contained several contradictions about his encounters with the guerillas and "equivocal and surprisingly uncorroborated testimony regarding his purported marital relationship." The record shows that Salcedo-Mora indicated in his asylum application and in a statement to a Colombian human rights office that he was single, but he later claimed that he had a common-law marriage with Vera-Leguizamon. Although he argues that the application did not give the option of indicating a common-law marriage, he did not explain why he checked "single" instead of "married," and he did not explain his common-law relationship anywhere in his asylum application. In addition, Vera-Leguizamon did not file the I-730 petition until April 2003, several months after she was granted asylum in September 2002 and the beginning of Salcedo-Mora's removal proceedings in October 2002, and Vera-Leguizamon was present at the merits hearing, but did not testify to their marital status or provide an affidavit.

The record also shows contradictions regarding Salcedo-Mora's interaction with the FARC, specifically, as the IJ noted, when that interaction began and how long he was detained. His application stated that he started receiving notes from the FARC in June 2001, but he testified both that (1) the messages began in July 2001 and that (2) messages were received "every month" for "several months"

until he encountered a particular FARC intermediary in July 2001. In addition, he declared to the Colombian human rights office that guerillas detained him for 30 minutes, but his application stated that the incident took "a couple of hours." Although Salcedo-Mora tried to explain the discrepancies, the discrepancies are material to his asylum claim on the basis of persecution, and the record does not compel the conclusion that he was credible. Indeed, the record contains additional discrepancies regarding Salcedo-Mora's connection to the Liberal Party.

Substantial evidence also supports the finding that Salcedo-Mora did not establish that any past persecution or fear of future persecution was based on a statutorily protected ground. See 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. Because Salcedo-Mora was found to be not credible, he needed to present corroborating evidence to support his claim. However, his declaration to the human rights office contradicted his application and testimony, and the purported declarations of people in Colombia were not translated correctly or completely. Salcedo-Mora points to the Country Report, but has failed to show that he would be singled out or that there was a pattern or practice of persecution of similarly-situated persons based on political opinion. See Al Najjar, 257 F.3d at 1287; 8 C.F.R. § 208.13(b)(2)(iii). In addition, although he provided documentation of his work for the civic corporation, he did not explain how his work for the civic corporation was an expression of his political opinion.

11

Even if assumed to be credible, however, Salcedo-Mora did not clearly articulate a political opinion either in his asylum proceedings or to the FARC, and, thus, he also did not show that he was mistreated on account of his political opinion. Indeed, he stated in his application that he told the FARC that he could not provide money and food because he did not own the farm, not because he disagreed with their politics. As noted by the IJ, it appears that any alleged persecution resulted from Salcedo-Mora's refusal to provide goods and services, rather than his political opinion. Although he argues that the IJ should have considered a mixed motive, the record does not establish that Salcedo-Mora had a particular political opinion or that the FARC knew of such an opinion. Even if the question is debatable, the record does not compel a contrary conclusion. See Mendoza, 327 F.3d at 1287.

Substantial evidence also supports the conclusion that, even if assumed to be credible, Salcedo-Mora did not show that his alleged mistreatment rose to the level of persecution. In particular, his testimony shows that he received demands and threats in the form of about five letters and a few telephone calls over a six-month period, and was detained by armed guerillas for up to two hours without suffering any physical harm. His case is distinguishable from Mejia, where the petitioner suffered a broken nose and was threatened over a period of 18 months. See Mejia, 498 F.3d at 1257-58. In addition, this Court has emphasized that persecution is an

extreme concept.  See Zheng, 451 F.3d at 1290.  Even if it is not clear whether Salcedo-Mora's alleged mistreatment rose to the level of persecution, the record does not compel a contrary conclusion.  See Mendoza, 327 F.3d at 1287.  Because Salcedo-Mora did not establish eligibility for asylum, he also did not meet the higher burden of establishing eligibility for withholding of removal.  Accordingly, we deny the petition.

**DENIED.**